## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

KIMBERLY B.,

                             Plaintiff,

      v.                                    5:22-CV-350 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

---

JUSTIN M. GOLDSTEIN, ESQ., for Plaintiff
NATASHA OELTJEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I. PROCEDURAL HISTORY

On or about April 15, 2020, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning January 9, 2019. (Administrative Transcript ("T") 14, 106, 107). Plaintiff's applications were denied initially on August 14, 2020 (T. 162-179), and upon reconsideration on September 22, 2020 (T. 186-208). On January 4, 2021, Administrative Law Judge ("ALJ") Jeremy Eldred conducted a hearing during which plaintiff and vocational expert ("VE") Christine DiTrinco testified. (T. 26-50).

1

On February 1, 2021, the ALJ issued an order denying plaintiff's claim.  (T. 10-19).
This decision became the Commissioner's final decision when the Appeals Council
denied plaintiff's request for review on February 15, 2022.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security
Income benefits must establish that she is "unable to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment which
can be expected to result in death, or which has lasted or can be expected to last for a
continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In
addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that
> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections
404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged
> in substantial gainful activity.  If he is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which significantly limits his
> physical or mental ability to do basic work activities.  If the claimant suffers
> such an impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which meets or equals the criteria
> of an impairment listed in Appendix 1 of the regulations.  If the claimant has
> such an impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work experience .

. . .   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial

support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

Plaintiff was thirty-four years old on the date of the administrative hearing.  (T. 26, 29).  She graduated from high school in regular education with accommodations. (T. 556).  She also has an associate degree in hospitality management and studied accounting at BOCES.  (*Id.*).  Her prior employment included work as an appointment coordinator at multiple car dealerships, a demo specialist at a big-box store, a cashier at both a construction store and a department store, a janitor at religious and educational institutions, and a cashier/food prep worker at an educational institution.  (T. 29-33, 305).

On April 15, 2016, plaintiff twisted her back while lifting a box of tiles at a construction store.  (T. 33, 654).  Plaintiff went to Urgent Care the next day and had physical therapy once or twice a week for a month following the injury.  (T. 654).  On February 1, 2019, PA Arnam diagnosed plaintiff with lumbar degenerative disc disease. (T. 361).  Plaintiff consistently complained of lower back pain radiating down her left

4

leg between March 2, 2018 and August 14, 2020. (T. 371, 376, 381, 386, 410, 415, 420, 425, 429, 433, 639, 644). However, at her October 12, 2018 New York Spine and Wellness Center visit she stated, "her low[er] back was feeling better" and "she does have less intense pain." (T. 390). Plaintiff's lower back injury appeared to improve for some period of time (T. 394, 398, 402, 406); however, after November 28, 2018, plaintiff again started complaining about lower back pain and pain radiating down her leg. (T. 410, 415, 420, 425, 429, 433, 639, 644).

Plaintiff also reported allergy and asthma complications. Plaintiff testified that she has severe allergies that cause her to have throat problems. (T. 34-37). To alleviate this condition, plaintiff was constantly drinking fluids causing her to require numerous bathroom breaks. (T. 35). She conducted five sinus rinses a day, in addition to taking three different allergy medications. (T. 36). Plaintiff testified that her allergies affected her ability to sleep because of the sneezing. (T. 35). In addition to her allergy and asthma issues, plaintiff also testified that she has type 2 diabetes. (T. 37). Plaintiff took Metformin daily, along with a weekly shot to control her blood sugar levels. (*Id.*). She testified that the medication "seems to help . . . but [her diabetes is] still not completely under control." (*Id.*).

Plaintiff testified she has difficulties bending, twisting, sitting, and standing for more than a short period of time. (T. 33). She is unable to run and has a hard time with hills and steps. (*Id.*). She is only able to walk for fifteen to twenty minutes before stopping. (T. 35). She testified that she can only lift up to fifteen pounds and does not use any assistive devices. (T. 36, 40).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 10-19).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ first determined that plaintiff met the insured status requirements for DIB through March 31, 2024.  (T. 12).  The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 9, 2019.  (*Id.*).  Next, the ALJ found that plaintiff has the following severe impairments: lumbar degenerative disc disease, asthma, allergic rhinitis, chronic sinusitis, and type 2 diabetes.  (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 14).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") for light work as defined in 20 C.F.R. § 404.1567(b) with the following specific limitations: "she can climb, stoop, kneel, crouch, or crawl no more than occasionally, must avoid exposure to concentrated dust, odors, fumes, or gases, and is unable to do work that is done outdoors or with animals." (T. 15).  In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p.  (T. 15).  The ALJ further noted that he considered "the medical opinion(s) and prior administrative

medical finding(s)" pursuant to 20 C.F.R. [§§] 404.1520(c), 416.920c.  (*Id.*).  After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*).  The ALJ then determined that plaintiff could perform her past relevant work as an appointment clerk.  (T. 18).  Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of January 9, 2019, through the date of the ALJ's decision.  (*Id.*).

## V.   ISSUES IN CONTENTION

Plaintiff raises three arguments:

1.   The ALJ failed to identify substantial evidence supporting the RFC. (Plaintiff's Brief ("Pl.'s Br.") at 12-25) (Dkt. No. 13).

2.   The ALJ failed to properly evaluate the medical opinions of Lauren Krisak, Thomas Griffiths, Rita Figueroa, S. Gandhi, and I. Seok.  (Pl.'s Br. at 1, 13-24).

3.   The ALJ failed to properly evaluate plaintiff's subjective complaints. (Pl.'s Br. at 1, 24-25).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 4-22) (Dkt. No. 17).  For the reasons stated below, this court agrees with the defendant and finds the ALJ's decision was supported by substantial evidence.

## DISCUSSION

**VI.** **RFC/EVALUATING MEDICAL EVIDENCE/EVALUATING SUBJECTIVE SYMPTOMS**

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010);

*Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical

opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered

10

those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Evaluation of Subjective Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 Fed. Reg. at 14167.  Instead, symptom evaluation tracks the language of the regulations.[1]   The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

---

[1] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the plaintiff's symptoms is not "an evaluation of the claimant's character." 81 Fed. Reg. at 14167.  The court will remain consistent with the terms as used by the Commissioner.

If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[2]

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B.    Summary of Medical Opinion Evidence

In this case, the ALJ considered both treating source and consulting opinions related to plaintiff's physical and mental limitations. Plaintiff has challenged the ALJ's

---

[2] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

evaluation of these opinions.  A summary of the opinion evidence and the ALJ's findings are set out below.

### 1.    Thomas Griffiths, Ph.D.

On January 11, 2007, Dr. Griffiths issued a report evaluating plaintiff's neuropsychological capabilities.  (T. 354-58).  Dr. Griffiths administered multiple intelligence tests and interviewed plaintiff.  (T. 354-56).  He diagnosed plaintiff with reading and written expression disorders.  (T. 356).  Dr. Griffiths noted "there was evidence of weakness in the areas of attention, concentration, and conceptual tracking." (T. 357).

The ALJ did not explicitly determine whether Dr. Griffiths's 2007 opinion was persuasive but did implicitly evaluate his findings.  (T. 13, 14 (citing Ex. 1F at 5).  The ALJ cited contrary mental health evaluations of plaintiff in 2020 which indicated that she had no mental limitations, and "only mild limitation in her ability to understand, remember, or apply information; no limitation in her ability to interact with others; no limitation in her ability to concentrate, persist, or maintain pace; and no limitation in her ability to adapt or manage herself."  (T. 13).  Moreover, the ALJ found that plaintiff's work history included employment that could not be performed by someone with significant deficits in reading and writing.  (T. 14).

### 2.    Consultative Examiner Dr. Rita Figueroa

Dr. Rita Figueroa performed a consultative physical examination of plaintiff on August 5, 2020.  (T. 562-566).  Prior to the examination, plaintiff reported chronic low back pain, history of asthma, and type 2 diabetes.  (T. 562-63).  During the examination, plaintiff demonstrated a normal gait, but declined to walk on her heels and toes to avoid

13

pain.  (T. 564).  She used no assistive devices and did not require any assistance changing for the examination, getting on and off the examination table, or rising from a chair.  (*Id.*).

Upon her examination, Dr. Figueroa observed a limited range of motion in plaintiff's lumbar spine, left hip, and left knee, but a full range of motion in her arms, ankles, right hip, and right knee.  (T. 564-65).  She further observed plaintiff was hypersensitive to a pinprick sensation in her left arm and leg, but dull in her right leg.  (T. 565).  Based on her examination, Dr. Figueroa opined that plaintiff would have moderate limitations bending, lifting, carrying, twisting, walking, standing, kneeling, squatting, and crawling.  (T. 566).  No limitation with respect to sitting was noted by Dr. Figueroa.  The ALJ found this opinion to be persuasive, as it was "well supported by the detailed findings from [Dr. Figueroa's] physical examination of the [plaintiff]."  (T. 17).  The ALJ also found the opinion persuasive because it was "consistent with the record as a whole, including . . . [plaintiff's] subjective complaints."  (T. 18).

### 3.    State Agency Consultants Gandhi and Seok

Drs. Gandhi and Seok reviewed plaintiff's then-current medical records and prepared opinions on plaintiff's functional limitations.  (T. 104-127, 130-154).  Based on their review, Drs. Gandhi (in August 2020), and Seok (in September 2020) opined that plaintiff could occasionally lift or carry up to twenty pounds and could frequently lift or carry up to ten pounds.  (T. 111, 123, 137, 150).  The consultants further opined that plaintiff could stand or walk for a total up to six hours and could sit for the same length of time each workday.  (T. 111, 123, 138, 151).  Drs. Gandhi and Seok found no limitations with regard to plaintiff's ability to push or pull.  (*Id.*).

14

Drs. Gandhi and Seok opined, plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  (T. 112, 123-24, 138, 151).  The consultants further opined that plaintiff could occasionally stoop, kneel, crouch, and crawl, but had no limitations with regard to balance.  (*Id.*).  They also opined that plaintiff had no manipulative, visual, or communicative limitations, but needed to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (T. 112, 124, 139, 152).  The ALJ found Gandhi and Seok's opinions persuasive because they were "both supported by a detailed narrative rationale" and "consistent with the record as a whole, including . . . [plaintiff's] subjective complaints."  (T. 17-18).

### 4.   PA Lauren Krisak

 PA Lauren Krisak provided a medical source statement dated November 12, 2020.  (T. 604-06).  In the opinion, PA Krisak indicated she saw plaintiff "every three months for three months," and diagnosed plaintiff with lumbar DDD, herniated disc, and radiculopathy.  (T. 604).  PA Krisak opined that plaintiff could only sit for twenty minutes at a time, and needed a job that permitted shifting position at will from sitting, standing, or walking.  (*Id.*).  She also opined that plaintiff could sit and stand/walk for a total of four hours in an eight-hour workday with normal breaks.  (*Id.*).  She further opined that plaintiff could not lift more than ten pounds and can only rarely lift less than ten pounds.  (*Id.*).

PA Krisak opined plaintiff needed to take ten-to-fifteen-minute breaks every twenty minutes.  (T. 605).  She further opined plaintiff would likely be absent from work more than four days a month because of her impairments or treatment.  (T. 606).  She noted that plaintiff's severe allergies prevented her from working in a factory,

outside, or anywhere with large amounts of dust.  (*Id.*).  She also noted plaintiff needed to be close to a restroom due to diabetes.  (*Id.*).

The ALJ found PA Krisak's opinion unpersuasive because "it was not well supported by reference to objective medical evidence and it is inconsistent with other evidence in the record, including the activities of daily living and other factors discussed . . . in the evaluation of the [plaintiff's] subjective complaints."  (T. 18).  The ALJ also noted that PA Krisak's "few written comments indicate that her conclusions are simply based on the [plaintiff's] own comments."  (*Id.*).

### C.    Analysis

Plaintiff first argues that the ALJ failed to properly evaluate the medical opinions of Thomas Griffiths, Rita Figueroa, S. Gandhi, I. Seok, and Lauren Krisak.  (Pl.'s Br. at 1, 13-24).  At the outset, it is well settled that the ALJ was entitled to rely on Drs. Gandhi, Seok, and Figueroa's opinions because state agency consultants and consultative examiners are qualified experts in the field of social security disability.  20 C.F.R. § 404.1527(e); *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-CV-0591 (LEK/TWD), 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014) ("[T]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision.") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the opinions of the consultative examiner and the medical expert, which contradicted the opinions of treating sources, but were otherwise supported by the record).  Dr. Gandhi and Dr. Seok, after reviewing the then-available medical evidence, opined that plaintiff

was able to meet the exertional requirements of light work, with some additional limitations. [3]  Dr. Figueroa's opinion, that plaintiff had no more than moderate exertional limitations further supported the ALJ's light-work RFC.  *See, e.g.*, *Rayshown M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-7001, 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) ("[C]ourts in this Circuit have repeatedly upheld an ALJ's decisions that a claimant could perform light work when there was evidence that the claimant had moderate difficulties in prolonged standing, walking, sitting, bending, or lifting.") (collecting cases).  As set forth in defendant's brief, the ALJ also detailed other record evidence supporting his RFC, noting a lack of objective medical evidence supporting plaintiff's claim of more severe limitations from her lower back condition; the conservative nature of her treatment for various medical issues; the success of medication and treatment in effectively controlling her asthma, sinus infections, and diabetes; plaintiff's "reasonable activity level"; and the fact that she left her most recent job because the position was eliminated, not because of her medical condition.  (Def.'s Br. at 5-6 (citing the administrative record)).

The ALJ's decision reflects his consideration of the relevant regulatory factors in weighing the medical opinions from these sources.  (T. 17-18.)  For example, with respect to supportability, the ALJ properly noted Drs. Gandhi, Seok, and Figueroa

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . ."  20 C.F.R. § 404.1567(b). Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions which indicate "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday."  1983 WL 31251 at *6.

provided "detailed narrative rationales" that all cited to "supporting objective medical evidence and other evidence from the record." (T. 17). He also acknowledged that Dr. Figueroa's opinion was "well supported by the detailed finding from her physical examination of the [plaintiff.]" (*Id.*). The ALJ also considered the consistency factor noting that all three opinions were "consistent with the record as a whole, including the evidence . . . [of plaintiff's] subjective complaints." (T. 18).

With respect to plaintiff's treating sources, the ALJ found PA Krisak's opinion unpersuasive because "it was not well supported by reference to objective medical evidence and it is inconsistent with other evidence, including the activities of daily living and other factors discussed above in the evaluation of the [plaintiff's] subjective complaints." (T. 18). The ALJ also noted that "the few written comments indicated that her conclusions are simply based on the [plaintiff's] own comments." (*Id.*). It appears PA Krisak only treated plaintiff on one occasion. (T. 607, 611-624). With respect to supportability, the ALJ clearly considered that PA Krisak did not support her findings with objective medical evidence or supporting explanations. With respect to consistency, the ALJ specifically noted that PA Krisak's opinion was not consistent with other evidence in the record. (T. 16-18).

Plaintiff argues that the ALJ failed to identify any specific evidence that was "inconsistent with or unsupportive of" Krisak's opinions, including that plaintiff would frequently be absent from work and would need long and frequent breaks during the workday. (Pl.'s Br. at 14, 19). However, PA Krisak provided the only medical opinion in the record regarding plaintiff's absenteeism and need for breaks (T. 604-06) and

18

many of her other restrictive findings were more directly contradicted by the opinions of Drs. Gandhi, Seok, and Figueroa, and other record evidence.

The ALJ implicitly found PA Krisak's opinion inconsistent with her daily activities. (T. 18). PA Krisak opined that plaintiff could not lift over ten pounds and could rarely lift less than ten pounds. (T. 605). However, plaintiff testified that she could lift items that weigh less than fifteen pounds. (T. 36). Moreover, plaintiff testified that she could walk fifteen to twenty minutes without stopping, while PA Krisak opined that could only walk one city block without resting. (T. 35. 604). PA Krisak opined that plaintiff could only sit for twenty minutes at a time without changing positions (T. 604), but Dr. Figueroa did not make any finding regarding sitting limitations and Drs. Gandhi and Seok found plaintiff could meet the sitting requirement for light work.

PA Krisak did not cite to any evidence to support her conclusion that plaintiff would need a fifteen-to-twenty-minute break every twenty minutes or that plaintiff would miss more than four days of work per month. (T. 604-06). There is so little explanation that the court is unable to know which ailments would cause the breaks or absences. (*Id.*). Furthermore, it appears PA Krisak only treated plaintiff on one occasion. (T. 607, 611-624). As PA Krisak did not provide supporting explanations, the ALJ properly discounted her opinion. *Marie R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-775 (CFH), 2022 WL 2180989, at *16 (N.D.N.Y June 14, 2022) (citing 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a

medical opinion, the more weight we will give that medical opinion."); *Lajason L. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6884, 2023 WL 2480577, at *6 (W.D.N.Y. Mar. 13, 2023) ("[B]ecause the record does not support Ms. McVay's conclusion regarding Plaintiff's absenteeism, the Court finds that the ALJ properly omitted such a limitation from Plaintiff's RFC.").  *See also Sandra D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1067 (LEK/ATB), 2022 WL 344058, at *2, 6 n.1 (N.D.N.Y. Feb. 4, 2022) (finding no error in the ALJ's conclusion that a time off task limitation "was speculative and not supported by any objective evidence[ ]" because it was "the only opinion to specifically address off-task time" and "the record does address the issue, but conspicuously lacks any mention of the necessity of greater limitation[.]")

While the ALJ did not identify specific evidence that was inconsistent with PA Krisak's opinion in the brief part of his decision addressing that opinion, he did discuss conflicting evidence in other sections of the decision.  (T. 13-18).  "[T]he court is 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [his] determination was supported by substantial evidence.'"  *Beth F. v. Comm'r of Soc. Sec.*, No. 5:17-CV-723 (ATB), 2019 WL 1517036, at *10 (N.D.N.Y Apr. 8, 2019) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Indeed, the ALJ's decision indicates a thorough review of plaintiff's medical records with analysis that is supported by that evidence.  (T. 16-17).  In analyzing the severity of the plaintiff's impairments, the ALJ relied on the medical opinions in the record.  (T. 13-18).  In determining plaintiff's RFC, the ALJ cited to objective evidence including the very limited outpatient treatment records completed by PA Krisak.  (T. 18-21 (citing Exs. 3A, 4A, 7A, 8A, 3E, 2F, 3F, 5F, 6F, 7F, 11F, 12F, 13F, 18F, T. 114,

126, 144, 154, 294-99, 359, 361, 420, 423, 497, 499, 501, 502, 523, 540, 562-566, 611-12, 625, 642, 644, 647, 649).  The ALJ noted that while the plaintiff reported left-sided lumbar pain radiating down her left leg, she also deferred injection therapy and reported that medication was effective in controlling the pain.  (T. 16, 420, 423).  He further noted that plaintiff's examinations at multiple appointments reported normal gaits, despite plaintiff's complaints of lower back pain.  (T. 16, 361, 418, 423, 428, 431, 436, 647).

The ALJ observed that plaintiff's diabetes was well controlled and "she reported excellent blood glucose monitoring compliance, a generally healthy diet, and daily exercise.  (T. 16, 611-12).  The ALJ further noted that plaintiff's asthma was well controlled, her Spirometry tests were normal, and she rarely used her inhaler.  (T. 16, 497, 501-03, 508, 514, 534, 537, 539-40, 545, 590, 611).  The ALJ accounted for plaintiff's allergies by adding a restriction to her RFC prohibiting her from "exposure to concentrated dust, odors, fumes, or gases, and . . . work that that is done outdoors or with animals.  (T. 15, 649).  This court's review of the record supports the ALJ's analysis of the opinion of PA Krisak.

Plaintiff further contends that the ALJ failed to explain which of the plaintiff's subjective complaints were unsupported and failed to identify the evidence contradicting plaintiff's allegations.  (Pl.'s Br. at 25).  However, the ALJ adequately explained why he found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 19, 667, 682-83, 717, 741-42, 744, 750, 799, 804, 806).  The ALJ "identified a number of specific record-based reasons for

finding [p]laintiff's statement not entirely consistent with other evidence." (Def.'s Br. at 7-8). Specifically, the ALJ noted that plaintiff's treatment history was "relatively benign" and conservative. (T. 17). He also acknowledged that plaintiff maintained a reasonable activity level, as evidenced by her daily activities. (*Id.*). The ALJ further acknowledged plaintiff's "diabetes and asthma are both described as 'without complication'" (*Id.*) and her back pain was treated with "conservative treatments" (*Id.*). The ALJ also noted that plaintiff's pain medications were adjusted to inhibit any side effects they may have caused. (*Id.*). This analysis shows that the ALJ considered the nature, frequency of plaintiff's symptoms and how the objective evidence detracts from her allegations. 20 C.F.R. §§ 404.1529(c)(3)(ii), 416.929(c)(3)(ii).

The ALJ also explained that the objective evidence in the record, as well as plaintiff's daily activities, failed to support the level of severity alleged by plaintiff. (T. 15-18). The ALJ relied on the plaintiff's function report and consultative examination reports to determine the plaintiff's daily activities. (T. 17). Plaintiff's daily activities included walking her dog, preparing meals, doing small loads of laundry, mowing grass, driving for short distances, shopping in stores, and doing light household cleaning chores. (T. 17, 292-304, 558-59, 563). Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider. 20 C.F.R. § 416.929(c)(3). *See also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding the ALJ properly considered the plaintiff's varied daily activities in formulating the RFC); *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (affirming that activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

22

With respect to Dr. Thomas Griffiths's opinion, the ALJ was not required to evaluate his opinions because they were based on an examination of plaintiff more than a decade before her alleged onset date. *See, e.g.*, *Carway v. Colvin*, No. 13 Civ. 2431, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014) ("[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability."). In any event, as noted above, the ALJ presented much more recent evaluations of plaintiff's mental health limitations that were inconsistent with Dr. Griffiths's dated diagnosis. (T. 13, 14). Moreover, the ALJ found that plaintiff's work history "could not be successfully performed by an individual with significant deficits in reading and writing," again citing evidence contrary to Dr. Griffiths's 2007 findings. (*Id.*).

Moreover, Dr. Griffiths's report does not qualify as a "medical opinion" that requires close analysis. *See Michael H. v. Saul*, No. 5:20-CV-417(MAD), 2021 WL 2358257, at *6 (N.D.N.Y June 9, 2021). Under the current regulations, a medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities." 20 C.F.R. §§ 404.1513(a)(2)(ii), 416.913(a)(2)(ii). For mental limitations the regulations provide that a medical opinion will discuss "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." (*Id.*).

23

Dr. Griffiths's 2007 report was limited only to plaintiff's mental abilities and his findings did not opine on what plaintiff could still do despite her limitations.  (T. 354-57).  For example, Dr. Griffiths concluded that plaintiff's "use of attention, concentration, and conceptual tracking represents a relative weakness," but he did not discuss her ability to perform tasks despite the limitation.  (*Id.*).[4]

Even in the absence of detailed discussion of the regulatory factors, the ALJ's decision can be affirmed if "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.'"  *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citations omitted).  The ALJ's analysis of the overall treatment record, the medical opinion evidence, and plaintiff's own description of his functional limitations allows for meaningful review because this court can glean the rationale of the ALJ's RFC determination and his decision that plaintiff could perform her former work as an appointment clerk.  *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (holding that "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record

---

[4] Plaintiff argues that the ALJ's passing reference to a 2016 Workers' Compensation independent medical examination ("IME") constituted error.  (Pl.'s Br. at 22-23; T. 18).  Following his analysis of the other medical evidence relevant to RFC (T.15-18), the ALJ commented that the independent medical examiner concluded that plaintiff could work "with a 20 pound weight restriction."  (T. 18; *see* T. 656, 668).  The ALJ remarked that this IME assessment was generally consistent with lifting limitation of light work and provided "additional support" for his RFC finding.  (T. 18).  However, the ALJ did not purport to rely heavily on the 2016 assessment, recognizing that it was offered "well before the period at issue in this case."  (T. 18).  As defense counsel notes, the ALJ did not assess the persuasiveness of the IME, nor was he required to do so because it pre-dated the alleged onset date of plaintiff's liability.  (Def.'s Br. at 18-19).  Given the other substantial evidence supporting the ALJ's RFC determination, the ALJ's reference to this evidentiary makeweight is not error, or is harmless.

permits the court to glean the rationale of an ALJ's decision.") (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)). To the extent that plaintiff disagrees with how the ALJ weighed the evidence, it is not the proper role of this court to reweigh that evidence. *Shyla D. v. Kijakazi*, No. 3:20-CV-1295 (DJS), 2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (collecting cases). Where, as here, "the ALJ's conclusions find reasonable support in the record, courts 'will defer to the ALJ's resolution' regarding the appropriate weight to be afforded to various medical opinions." *Id.* (quoting *Teresa L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-682, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020)).

In sum, the court concludes that substantial evidence supported the ALJ's RFC determination and his ultimate finding that the plaintiff could perform her past relevant work as an appointment clerk. The court also concludes that the ALJ properly assessed the medical opinion evidence and plaintiff's subjective symptoms.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED,** and plaintiff's complaint its **DISMISSED**, and it is

**ORDERED**, that the Clerk enter **JUDGMENT FOR DEFENDANT.**


Dated: May 9, 2023

Andrew T. Baxter
U.S. Magistrate Judge